# Exhibit 1

**AGREEMENT,** made this 22nd day of December 2022 ("Effective Date") by and between FR PARK RACING, L.P. ("Freehold") a limited partnership conducting Standardbred Horse Racing through the FREEHOLD RACING ASSOCIATION and ATLANTIC CITY HARNESS, INC, annual harness racing permits as approved by the New Jersey Racing Commission (hereafter jointly referred to as the "Permit Holders"), and the STANDARDBRED BREEDERS AND OWNERS ASSOCIATION OF NEW JERSEY, INC., a Corporation organized under Title I SA New Jersey Statutes ("SBOANJ") (collectively "the Parties")

**WITNESSETH**

**WHEREAS,** The Permit Holders are licensed by the New Jersey Racing Commission ("Commission") to conduct and are engaged in the business of conducting, among other things, pari-mutuel harness racing at the track known as Freehold Raceway ("Raceway"); and

**WHEREAS,** the SBOANJ consists of owners, breeders, trainers and drivers of harness horses who include harness horsepersons racing at the Raceway and represented by the SBOANJ by a majority of the latter and recognized in the passage of Omnibus Racing Law, Chapter 327 (N.J.S.A. 5:5-1 1, et seq.) as the representative for the purpose of negotiating the within Agreement, and

**WHEREAS,** the Parties desire to cooperate in promoting the popularity of the sport of harness racing and ensuring the continuity of harness racing of high quality at racing facilities for the best interests of the Parties and the public;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements herein set forth, it is agreed as follows:

**FIRST**: The term of this Agreement shall be from the Effective Date through June 30, 2025. After the initial term, the Agreement can automatically be extended for two (2) additional one (1) year terms unless either party gives written notice to the other party within ninety (90) days before the end of the initial term, or any extended term, that it will not renew the Agreement.

**SECOND:** As used in this Agreement, the term "racing meeting" is defined as those days allocated to the Permit Holders to conduct harness racing at Freehold Raceway by statute and approved by the Commission during the term of this Agreement.

**THIRD: A.** The Permit Holders shall withhold, deduct, and pay to the SBOANJ five percent (5.0%) of the sums delivered from pari-mutuel wagering which have been allocated for purses inclusive of purses derived from simulcasting and five percent (5.0%) of any sums allocated to purses pursuant to Paragraph ELEVEN of this Agreement, including any state appropriated supplemental purse funds, (excluding stakes monies or nominating, sustaining or entry fees) to be used by the SBOANJ, in its discretion, for the benefit of horsepersons and for the reasonable costs of administration of the SBOANJ. Such amounts due shall be calculated monthly and payments shall be made on the 15th day of the following month, or if the 15th day of a particular month falls on a weekend or national holiday, on the next business day.

**B.** It is agreed that the Permit Holders have no responsibility respecting any programs sponsored or maintained by the SBOANJ and that its sole responsibility to the SBOANJ is to deduct and pay to it the sums provided in Sub-Paragraph (A) above. The SBOANJ shall comply with all federal, state and local

requirements as well as any rules and regulations of the Commission if any, regarding any programs established from said sums and the use of such funds.

C. The SBOANJ shall indemnify and hold Permit Holders harmless against claims, losses, expenses, judgements, penalties or liabilities imposed upon or suffered by the Permit Holders arising out of, or in connection with, payments provided for in Paragraph THIRD above, provided however, that the Permit Holders shall defend against such demands to the best of their ability, that the SBOANJ shall defend as well against any such claims and liabilities as herein described and that the Parties shall give all reasonable and necessary cooperation to each other in such cases.

**FOURTH:** The Permit Holders shall meet quarterly with the SBOANJ to estimate probable funding sources that are used for establishing overnight purse levels with the object of achieving as nearly as possible, an even purse distribution.

**FIFTH:** The Parties agree that the Freehold Horsemen's Purse Account is a trust account held exclusively for the benefit of the Horsemen represented by the SBOANJ and racing at Freehold Raceway and both overpayment and underpayment of the purse accounts should be kept at reasonable levels. The Parties agree that any underpayment of $250,000 or less, at the end of each calendar year during the term of this Agreement shall automatically be used for purses for the next race meet conducted at Freehold. Supplemental purse funds shall not be considered in calculating the amount of underpayment of purses. Should a purse underpayment in excess of $250,000 (excluding supplemental purses receipts) exist at the end of any calendar year of this Agreement the Parties will mutually agree to meet and discuss options to address distribution, in the form of purses, for funds in excess of $250,000.

Should there be any overpayment of the purse account at the end of each calendar year during the term of this Agreement, the Parties agree that such overpayment may be deducted from the purse account for the next race meet conducted at Freehold. Freehold will endeavor to limit overpayment to $250,000 but will have full right to receive reimbursement for any overpayment from future purse proceeds whether such funds are pari-mutuel based, or through non-pari-mutuel supplemental sources allocated to purses.

Should any overpayment of $250,000 or greater exist at the end of any calendar year, reimbursement of such payment shall be done over a period of not less than six (6) months. Freehold will provide purse account status within five (5) days of written request by the SBOANJ. Such request shall not be made more than one time per month.

The purse account status shall include information on all sources deposited to or debited from the Freehold Horsemen's Purse Account. Upon reasonable request and with reasonable notice, the SBOANJ shall have the right to audit the Freehold Horsemen's Purse account and its components, at its sole cost, to verify the accuracy of all deposits, debits, revenues and expenses associated with that account as reported by the Permit Holder. The SBOANJ shall have the right to audit, at its sole cost, all simulcast agreements, any international agreements, ADW agreements, including but not limited to signal rates, fees, signal receipts, exclusivity agreements and any purse revenue producing agreements (including source market fees) along with all supporting documentation upon reasonable notice, including daily reports from time to time if requested. This provision in no way shall limit any rights of audit, inspection, accounting or similar right the SBOANJ may have to common law, federal or state statute or regulation or contract.

**SIXTH:** During term of this Agreement when purses are receiving any form of supplemental funds the Permit Holders, annually, shall not distribute less than $350,000 or more than a total of twelve percent

(12.0%) from the total sums derived from pari-mutuel wagering as purses for stake, futurity, invitational, or early or late closing events. The amounts from this section for purses for existing Freehold sponsored stakes will be a minimum of $100,000. The balance shall be used to support New Jersey Sire restricted races sponsored by the SBOANJ and NJSS, not including New Jersey Sired or Owned and Sired overnight events. For the purpose of this Agreement, any race with a purse in excess of Twenty-Five Thousand Dollars ($25,000) shall be included in the calculation of the twelve percent (12.0%) available for distribution under this section.

**SEVENTH:** The Permit Holders shall, as far as practicable, endeavor to provide reasonable entry preferences for overnight entries and preferred lists based on criteria as mutually agreed upon by the Parties, which may be modified from time to time.

The Parties agree to meet prior to the start of each race meet in order to review and discuss race conditions, preferences for races to be conducted during the race meet and any other matters of mutual interest related to the racing program for the race meet.    If mutually agreed upon by the parties, changes and/or modifications to race conditions or preferences may be made during the race meet.

The Parties agree to cooperate in good faith to make such adjustments in the race conditions and preferences to maximize field size and increase wagering while keeping with the type of racing currently conducted by the Permit Holders. The Permit Holders also agree to apply date when sorting horses and break equal preferences dates ("tie dates") with horses meeting the agreed upon preference system in place.

   A. The Race Secretary shall write two (2) races per day for New Jersey Sired/Freehold Preferred. These races shall be designated on the Condition Sheet as "New Jersey Sired/Freehold Preferred." The "Freehold Preferred" designation shall be mutually agreed upon by the SBOANJ and the Race Secretary and shall be assigned to the bottom condition and claiming classes at the race meet or other conditions as agreed upon by the parties. The Race Secretary shall attempt to include one race per week to include New Jersey Sired or Freehold Preferred trotting horses.

   B. A New Jersey Sired Horse shall be defined as a foal sired by a New Jersey Registered Stallion conceived in the normal Northern Hemisphere Breeding season, and whose name shall appear on the official Stallion Register of the SBOANJ in the year of conception.

   C. New Jersey Sired and/or Freehold Preferred races as noted in Subsection A above, other than those under the jurisdiction of the New Jersey Sire Stakes Board of Trustees shall carry a purse equivalent to the corresponding race written for open competition plus a supplement of twenty-five percent (25%).

   D. Unless mutually agreed upon by the Parties the minimum purse shall be no less than $4,000 while a state supplement of purses, or other supplemental purse funds, are received by Freehold. Should state supplement of purses, or other supplemental purse funds not be made available the Parties agree to mutually agree to adjust the minimum purse amount. The minimum claiming price shall be no less than $5,000.

   E. Amateur Races:  To provide consistent racing opportunities for all classes of horses that are available and desire to race at Freehold throughout the term of this Agreement and minimize the impact on the non-amateur, regular live racing card, Freehold agrees that the Racing Secretary may write a maximum of two (2) Amateur races per week (separate divisions are counted as a single race for determining the maximum amount above and divisions shall be seeded according to class.)

**EIGHTH:** The Permit Holders shall maintain, at their expense, a fire disaster policy. The Permit Holders shall make their public liability insurance policy available for inspection and review by the SBOANJ.

A. The Permit Holders shall use best commercial efforts to supply the following on live racing dates during the term of this Agreement:

1. A track photographer to supply photographs for winning owners, trainers, horsemen. SBOANJ acknowledges that services provided by track photographer must be financially self-sustaining and pricing/policies for track photographer and services may be adjusted accordingly during the term of the Agreement;

2. an outrider, with costs allocated as follows:
    a. Permit Holders shall pay the daily/hourly rate for the outrider;
    b. Permit Holders and SBOANJ will share equally in any stipends paid to the outrider for the care of maintenance of outrider's horse(s) as agreed upon with outrider;

3. a winner's circle attendant
    a. SBOANJ agrees to assist Permit Holders in recruitment of individual for this position if requested and staffing of this position will be based on availability of qualified individual.

**NINTH:** The Permit Holders shall maintain all facilities at the Raceway, including the paddock area. In the event that a designated representative of the SBOANJ notifies the appropriate representative of the Permit Holders, in writing of (1) a condition which adversely affects the integrity of the Raceway or Raceway facilities (2) a hazardous or dangerous condition at the Raceway or Raceway facilities; which would include adequate paddock parking area lighting (3) a substandard condition existing at the Raceway which materially affects the ability of the Permit Holders to conduct live racing (4) any condition which affects the health and welfare of the horses, the Permit Holders shall commence such repairs that are necessary to remedy such condition within seventy-two (72) hours from the date of receipt of the notice, providing weather and other contributing factors permit.

In order to reduce the potential for environmental contamination and to improve the health and welfare of horses shipping onto the property to participate in qualifiers or the live racing card, the paddock, testing stalls, stalls designated as ship-in stalls, and the surrounding areas shall be maintained in a manner to minimize the risks associated with contamination and be cleaned and sanitized daily, unless New Jersey Racing Commission guidelines mandate stricter requirements.

The SBOANJ will furnish the Racing Secretary with a list of up to two (2 drivers and three (3) trainers who will consult with the Permit Holders regarding the cancellation of races during inclement weather. A cancellation protocol shall be established and provided to SBOANJ for distribution. If track conditions warrant review, this shall include communications with the track committee, track superintendent, the judges and the horseman's representative.

Additionally, representatives of the Permit Holders and the SBOANJ will meet quarterly to discuss recommendations concerning initiatives or improvements in the racing facility, advertising, marketing or promotions, and the overall quality of racing, which, if accepted, can be jointly undertaken to increase attendance, patron comfort, increased racing participation and field size at the facility.

The Permit Holders and SBOANJ shall establish a joint committee (the "Freehold Development Committee") to increase attendance, handle, racing quality, participation and enhance public perception of standardbred racing. The Permit Holders and SBOANJ agree to fund the Freehold Development Committee with $25,000 from each party (for a total of $50,000) in the first year of this Agreement. The parties agree to cooperate in good faith with the Freehold Development Committee regarding mutually agreeable and beneficial initiatives and any additional or future funding during the term of this Agreement. Parties agree to establish a mutually agreeable process for the accounting of funds for the Freehold Development Committee.

**TENTH:** The SBOANJ agrees that during the term of this Agreement, it shall use its best efforts to ensure that the Permit Holders shall have continuously available during the racing meeting an adequate supply of harness racing horses that are of a level or quality consistent with the purses offered.

**ELEVENTH:**   A. The Parties understand and acknowledge the rights of each party under the 15 U.S. Code Chapter 57, The Interstate Horse Racing Act and, furthermore, the SBOANJ shall be acknowledged as the recognized representative of harness horseperson's group as defined in the Federal Act. The Parties further acknowledge that the interstate transmission of, and wagering upon, Freehold's races is an important source of revenue for both Parties.

B. Parties acknowledge that implementation of Fixed Odds Wagering pursuant to N.J.S.A. 5:5-190, et al on Freehold's live races pursuant to N.J.S.A. 5:5-190, et al are subject to review and approval of the SBOANJ. The Parties acknowledge that any revenue share generated from sports wagering shall be calculated from the first live wager taken by Permit Holders, unless previously agreed upon, and accrue to the benefit of the Freehold Horsemen's Purse Account.  Any final agreement on revenue shall also include any retroactive payments due under this section or pursuant to any agreement by the parties.

   C. Freehold shall have the sole responsibility to enter into contractual agreements with interstate wagering outlets/locations. At least 30 days prior to the start of any race meet, Freehold will provide a list to the SBOANJ of prospective interstate wagering outlets/locations seeking approval to contract with Freehold for wagering on Freehold races during that meet. SBOANJ's consent to the list of prospective inter-state wagering outlets/locations shall not be unreasonably delayed and written consent shall be provided within ten (10) days of receipt of list from Freehold (the "Approval Period."). The SBOANJ approval under this section shall be interpreted consistent with 15 U.S. Code Chapter 57, The Interstate Horseracing Act.  The SBOANJ's approval does not extend to any site not specifically scheduled with the fees of any type listed, whether daily or flat rate, host rates received (including host fee rate), source market fee or otherwise.

   If a prospective interstate wagering outlet had an Agreement with the Permit Holder in the prior calendar year, and there is no material reduction in revenue collected in the contractual agreement presented for approval in the current calendar year the consent of the SBOA shall be governed by the Interstate Horseracing Act. Such consent shall be for the duration of the meet unless changes occur or provisions of (E) apply below. Freehold may-shall submit supplemental list(s) of inter-state wagering outlets/locations to SBOANJ for approval as changes occur during the race meet.

   During the Approval Period, Permit Holders shall not send the signal to any export site not listed on any wagering outlets or locations, revise or receive fees of any type, whether daily or flat rate, host fees received (including host fee rate), source market fee or otherwise from any Export site not on the list without the full disclosure to any receipt of additional express approval from the SBOANJ.

   D. Upon written notice to Freehold, the SBOANJ may inform Freehold of its intent to withdraw consent for one or more of the previously approved interstate wagering outlets/locations.  SBOANJ shall provide specific details as to the reason for the withdrawal of such consent. The Parties agree to meet within seven (7) days of the receipt of such written notice by Freehold to attempt to resolve the dispute regarding the wagering outlet(s.) If the Parties are unable to resolve the dispute within that time period, then the SBOANJ may serve written notice to Freehold withdrawing consent for one or more of the previously approved simulcast outlets/locations and Freehold agrees that such simulcasts will cease within three (3) calendar days of receipt of such notice.

   E. In the event the Permit Holders enter into an agreement for the interstate or international televising and/or wagering on their harness racing programs and that agreement provides for payment of a fee to the Permit Holder on a per race, per diem or other basis other than payment received as a result of an interstate common pari-mutuel pool pursuant to P.L. 1991, Chapter 411 the Permit Holders agree to allocate fifty (50%) percent of the net revenue, if any, derived from same to overnight purses, provide a full accounting of and breakdown of the net revenue and total deposit. The Parties acknowledge that this distribution of simulcasting revenue is not required under current New Jersey statutes.

F. It is agreed that any transmissions of racing programs from other Racetracks to the Raceway shall not result in any reduction in the number of live races on the scheduled card by the Permit Holders and shall not replace any live races on the scheduled card. The Permit Holders further agree use best efforts to conduct a minimum of ten (10) overnight races each weekday, subject to an adequate number of entries for such race cards that would ensure at least eight (8) horses for each of the ten (10) races to be offered. The Permit Holders shall be permitted to conduct as many races as they see fit on Saturday and holiday cards.

**TWELFTH**: Should the Permit Holders: 1) revoke the racing privilege of any owner, trainer or driver; or 2) deny, to any owner, trainer or driver who raced during the days allocated to the Raceway during the prior year, the right to race at the location of racing conducted by the Permit Holders at the beginning of the immediately succeeding year, then in either of such events, such person shall have the right to request and receive the reason for such action. In addition, such owner, trainer or driver may elect to have the SBOANJ notified of the reason thereof. The SBOANJ may then inform the New Jersey Racing Commission of the action taken by the Permit Holder and request an opportunity for the Parties to appear before the Commission for review of the matter. Should the Racing Commission advise that it disapproves of the action taken by the Permit Holder, the racing privilege shall be promptly reinstated by the Permit Holder. Notwithstanding this Section, the Permit Holder shall be permitted to take any legal action it deems necessary regarding the integrity of racing at Raceway. The forgoing is applicable only to management actions and shall not be deemed to modify or to interfere with any rights of horsepersons afforded under disciplinary actions by State Officials, such as, but not limited to, Judge Stewards, or the Racing Commission.

**THIRTEENTH**: The Parties agree that the Permit Holders shall enter into contract with a veterinarian licensed by the State of New Jersey to provide emergency veterinary services, which contract shall provide that the veterinarian shall be present at the Raceway at all times when racing is conducted.

**FOURTEENTH**:    A. The Parties agree that all horses shall be on the gate at the start of each race in all overnight races with the exception of Early or Late Closing events. However, there shall be no trailers in the finals of any Early or Late Closing events. The implementation of nine (9) horse fields will be discussed by both Parties as to the advantages and frequency of the races.

B. The Parties agree that any race in which nine (9) horses participate, in addition to those sums paid as purses pursuant to the provisions of the New Jersey Racing Act and Paragraph FOURTH of this Agreement, the horse placing sixth in each such race shall receive a sum equal to two and one-half percent (2.5%) of the amount of the purse offered for the race. This two and one-half (2.5%) shall be in addition to the sums totaling one hundred percent (100%) of the offered purse for the race paid to the horses finishing first, second, third, fourth and fifth in any such race.

**FIFTEENTH**:    A. Freehold agrees to pay to the SBOANJ the sum of one hundred twenty thousand ($120,000) dollars per year for the SBOANJ horsemen's benefits and the administrative costs to be made in quarterly payments to the SBOANJ. Fifty percent (50.0%) shall be contributed from the Permit Holders and fifty percent (50.0%) shall be distributed from the purse account.

B. In the event supplemental funds for the purse account are received or contributed from non-pari-mutuel sources Freehold Raceway shall be entitled up to $85,000 annually. This provision shall be in effect for each year of this Agreement, including extension periods. The amounts in this section are intended to reimburse Freehold Racing for the $60,0000 contributed under Subsection A of this Section and $25,000 for its satellite/simulcasting uplink/equipment costs. Such reimbursements shall be considered part of revenues derived from interstate simulcast export of Freehold's races.

**SIXTEENTH**: The Permit Holders agree to contribute to the sums available for distribution as purses, all sums earned as interest on undistributed moneys, derived from the pari-mutuel handle and any supplemental funds available for distribution as purses, commonly referred to as the Horseperson's account.

**SEVENTEENTH**: The Permit Holders agree to make reasonable attempts to make up any racing days cancelled due to the inclement weather, or any other cause, to the best of their ability.

**EIGHTEENTH:** In the event of a cancellation after 9:00 a.m. on a live race date, horses that arrive at Freehold for the current race day will be reimbursed for expenses according to the policy adopted by the SBOANJ and Freehold. Under no circumstances will the reimbursement exceed $250-per horse. Horses scratched for any reason are not eligible under the reimbursement policy. Payments made under this reimbursement policy shall be made from the Purse Account and paid directly to the owner's account. No payments shall be made for Drivers and/or Trainers.

**NINETEENTH:** The interpretation of the provisions of this Agreement shall be governed by the laws of the State of New Jersey and 15 U.S. Code Chapter 57, The Interstate Horseracing Act. The performance and operation of this Agreement during the entire term hereof shall be subject in all respects to the provisions of the New Jersey Racing Act, N.J.S.A. 5:5-22 et seq., and to all the Rules and Regulations of the New Jersey Racing Commission. In the event circumstances arise, which may cause the voiding of any portion of this Agreement, then only that portion of this Agreement shall be void and all other provisions shall survive and be given full force and effect by all Parties thereto.   The parties agree that in the event that any portion of this Agreement is voided pursuant to this Section, the Parties shall, within thirty (30) days of the voiding of any provision of this Agreement, commence good faith negotiations to address the voided contractual provision(s.)   In the event a party challenges the validity of any provision of this Agreement pursuant to Section Twenty First below, the existing Agreement provisions then in effect until a resolution is made pursuant to Section Twenty First.

**TWENTY:** This is the entire Agreement between the Parties. Any modification or amendment thereof must be in writing and signed by the Parties or their duly authorized representatives.

**TWENTY FIRST:** This Agreement has been executed in the State of New Jersey and shall be interpreted, governed, and construed in accordance with the laws of the State of New Jersey without giving effect to any choice or conflict of law provision or rule that would cause the application of laws of any jurisdiction other than the State of New Jersey.   To the extent that there are any disputes arising out of or related to this Agreement, those disputes shall be resolved in the federal courts of New Jersey.

**TWENTY SECOND:** When written notice is required under this Agreement, it shall be served as follows:

As to SBOANJ:

Standardbred Breeders and Owners Association of New Jersey
64 Business Route 33
Manalapan, New Jersey 07726

As to Permit Holders:

General Manager, Freehold Raceway
130 Park Avenue
Freehold, New Jersey  07728

With copy to:
General Counsel Greenwood Racing, Inc.
3001 State Road, P.O. Box 1000
Bensalem, PA  19020

With a copy to:
Chief Legal Counsel/Penn Entertainment, Inc.
825 Berkshire Blvd. Wyomissing, PA 19610

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the day and year first above written.

ATTEST:

By: _____

ATTEST:

By: _____

STANDARDBRED BREEDERS AND OWNERS
ASSOCIATION OF NEW JERSEY, INC.

By: _____

FR PARK RACING, L.P.

By: _____